In re Eric Joseph CZANIK SS# 291–60–4232, Debtor.

Donald R. DIEKMAN, Plaintiff,

v.

Eric Joseph CZANIK, Defendant.

Adv. No. 1–84–0143.

Bankruptcy No. 1–84–00863.

United States Bankruptcy Court, S.D. Ohio, W.D.

Feb. 8, 1985.

George P. Brandenburg, Cincinnati, Ohio, for plaintiff.

Paul E. Lukey, Cincinnati, Ohio, for defendant.

**DECISION**

BURTON PERLMAN, Bankruptcy Judge.

This adversary proceeding arises in the bankruptcy case filed by defendant. In the complaint, plaintiff sets forth a claim for nondischargeability of a debt pursuant to 11 U.S.C. § 523(a)(6), asserting a debt for willful and malicious injury by the debtor to another entity. The complaint also seeks a denial of discharge pursuant to 11 U.S.C. § 727(a)(4), but this position was abandoned by plaintiff. The matter came on for a bench trial. We observe that the evidence at the trial established that plain-

638

tiff here obtained an uncontested default judgment against defendant in the state court. We cannot, however, give preclusive effect to that judgment because the issues were not actually litigated. *Spilman v. Harley*, 656 F.2d 224 (6th Cir.1981).

■ The case asserted by plaintiff is that defendant committed assaults and/or batteries upon him, for which he is entitled to compensation and punitive damages which should be held nondischargeable. The requirement of the Bankruptcy statute at 11 U.S.C. § 523(a)(6) for nondischargeability is that the act be intentional. *See In re Greenwell*, 21 B.R. 419, 420–21 (S.D. Ohio 1982). That the act be an intentional one is also a requirement of the law of Ohio. *See* 6 O.Jur.3d 103. (We look to the law of Ohio to define the elements of a case of assault and battery. *See In re Goodale*, 5 B.C.D. 395, 396.) The pertinent federal and state law thus are coextensive, so that if plaintiff succeeds in proving a case of assault and battery under the law of Ohio, any award thereunder will be nondischargeable.

The question arises whether the obverse proposition is also true, that a defense to the complaint under state law such as self defense, will also serve to defeat the federal claim. The indications are that this is so. *See In re Goodale, supra.* The rationale for this outcome under § 523(a)(6) is that while the act may be intentional, the successful defense defeats the requirement that it be malicious.

■ We turn now to an evaluation of the evidence presented at the trial. When we receive evidence for purposes of adjudicating an issue, we are, as is a jury, obliged to resolve issues of fact by evaluating the evidence in the light of the common experience of mankind. We must determine the credibility of witnesses and to do this, apply the tests of truthfulness we apply in our daily lives. One such test which is particularly relevant here, is the reasonableness of testimony. The determination of credibility is especially important in this case where evidence at the trial was for the most part oral. The story told by plaintiff

on the witness stand was substantially corroborated in important aspects by other witnesses.

The events here involved consist of two incidents which occurred on the evening of January 28, 1983 and the early morning of January 29, 1983. Plaintiff and defendant met that night in a shopping mall parking lot in the presence of a mutual friend, or at least one known to both of them, Mark Dwenger. Whatever else happened that evening, it is not disputed that plaintiff was thrown from the hood of defendant's car while it was being operated by defendant. It is further not disputed that later that same night, there was a confrontation between the parties at the front door of the apartment building where defendant dwelt, and that during that confrontation a gun held by defendant was discharged. While the central facts are not in dispute, the events surrounding them most certainly are. Plaintiff and defendant tell diametrically opposite stories as to who threatened whom, and who was the aggressor.

The first incident occurred about 11:30 P.M. on January 28, 1983 when plaintiff and defendant confronted each other at a Gold Circle Mall. Plaintiff says that the meeting arose because of his desire to seek an explanation from his long time friend Eric Czanik, defendant here, of why the latter was making disparaging remarks about plaintiff's fiancee, that in the course of this discussion defendant got into his car, started it, deliberately maneuvered it in such a way that plaintiff was required to leap onto the hood to avoid being struck, and then defendant further deliberately maneuvered the car in such a way that injury to plaintiff resulted. Defendant's version is that he was surprised by plaintiff's appearance at the meeting, that he was frightened of plaintiff, and plaintiff was injured in the course of defendant's efforts to escape. After considering the matter we conclude that defendant's version is closer to the truth than that of plaintiff.

The train of events here involved began a day or two before January 28, 1983. Plain-

tiff believed himself to be aggrieved by certain unflattering remarks he had been told had been uttered by defendant about his fiancee, Tracy. Plaintiff and his friend Mark visited defendant at his apartment one evening before January 28, 1983. Plaintiff, defendant, and Mark had long been friends and schoolmates. There was a heated exchange at that time between the parties. The outcome was that defendant asked plaintiff and Mark to leave, "threw them out".

On the night of January 28, 1983, plaintiff and Tracy went to a rock concert. After it was over, at about 11:00 P.M., they went to Mark's house. Mark then phoned defendant and arranged a meeting with defendant at a Gold Circle Mall. (While plaintiff testified that this was arranged without his knowledge, we do not find this credible. Instead, we find as a fact that the meeting was arranged by Mark at the request or direction of plaintiff. There is no other possible inference, because the meeting was not arranged by Mark until plaintiff arrived.) Mark did not disclose to defendant that plaintiff would be present.*

The meeting did occur. Plaintiff came to it accompanied by Mark. Plaintiff says that he approached defendant in a non-threatening way. As we indicated above, he testified that defendant then for no reason got into his car, started it, drove it into plaintiff who had to leap on the hood to avoid being struck, then drove it in such a way as was calculated to dislodge and injure plaintiff. Such testimony is not credible. The evidence is clear from plaintiff's own testimony, that when defendant saw plaintiff he got into his car and rolled up the window. This is a central fact in the case, for when one focuses on it, plaintiff's story begins to unravel. There can be no doubt, and we find as facts, that defendant was not expecting to see plaintiff at the Gold Circle rendezvous, that he was frightened when he saw him, and it was the unexpected appearance of plaintiff, which led to his getting into his car. We further credit defendant's testimony that plaintiff approached the car shouting threats against defendant. It follows, then, that the remaining acts in this portion of the pertinent events occurred as defendant sought to get away from plaintiff's abuse.

Plaintiff testified that he found himself on the hood of defendant's car in order to avoid being struck by defendant. Defendant says plaintiff hurled himself on the car in a fury at being deprived of the opportunity to vent his anger upon defendant. Irrational as plaintiff's conduct seems as related by defendant, defendant's version is more consistent with the antecedent facts that plaintiff believed himself aggrieved about the remarks about Tracy, and that plaintiff was responsible for arranging through Mark the meeting with defendant without disclosing to defendant that he had sought it.

Plaintiff then was injured when he was thrown from the hood of defendant's car. We find as a fact that this occurred as defendant sought to escape from plaintiff's abuse, not from an intentional act by defendant undertaken for the deliberate purpose of injuring plaintiff. Plaintiff's claim of the existence of a nondischargeable debt by reason of this incident therefore fails.

Plaintiff also contends that he suffered a battery at the hands of defendant in the early hours of the next morning when he was struck in the foot by a bullet fired from a gun carried by defendant. As was the case earlier that night when plaintiff was responsible for luring defendant to a confrontation with plaintiff at the Gold Circle Mall, plaintiff again caused a confrontation with defendant. The irrational conduct by plaintiff which followed the Gold Circle Mall incident lends credence to a central fact that we have found, that de-

---

* There is no satisfactory explanation in the record why defendant would agree to meet with Mark late at night at a deserted mall. In defendant's deposition there is a suggestion that Mark told defendant he wanted to apologize for his conduct at defendant's apartment. This would provide a plausible explanation, but there was not like testimony at the trial. While we can only speculate about defendant's reason for attending the meeting, we have no doubt that it was plaintiff who sought the meeting and ensuing confrontation.

fendant was a frightened man, and that he feared plaintiff. After the Gold Circle Mall incident, plaintiff and his cronies immediately drove to and past defendant's apartment. Finding him not home, they went to Mark's house where plaintiff's injuries from the Mall incident were given first aid. Plaintiff then again together with Mark and Tracy as well as Mark's brother, drove to defendant's apartment. There then ensued a confrontation between plaintiff and defendant across a closed, and presumably locked, pair of doors. Defendant had come downstairs from his second floor apartment carrying a loaded gun. The gun was fired and plaintiff was struck in the foot by the bullet. He was struck glancingly, for the skin was not broken.

Plaintiff's version of the transaction is that he was seeking an explanation from defendant for his acts, displaying his injuries, and demanding compensation for his torn tee shirt. The testimony is not credible. Where plaintiff was in a fury at the Mall, here he must have been in an absolute rage, as defendant testified. We find as a fact that the discharge of defendant's gun occurred involuntarily in reaction to physical threatening acts at the door of defendant's apartment by plaintiff which badly frightened the defendant. We reach the conclusion, therefore, that plaintiff's claim fails also as to the second incident between these parties.

Because we find that defendant's acts which resulted in injury to plaintiff were not intentional, we conclude that they were not willful and malicious, and therefore we find the issues in favor of defendant. The foregoing constitutes our findings of fact and conclusions of law.