**In re Joel TAYLOR, Debtor.**

**Kevin Kleman, Plaintiff,**

v.

**Joel Taylor, Defendant.**

**No. 03–3467.**

United States Bankruptcy Court, N.D. Ohio.

June 17, 2004.

Kevin Kleman, Glandorf, OH, Randy Lee Reeves, Lima, OH, for Plaintiff.

Joel R. Taylor, Ottawa, OH, William H White, Lima, OH, for Defendant.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Trial on the Plaintiff's Complaint to De-termine Dischargeability. The Plaintiff's Complaint is based upon the statutory exception to discharge set forth in 11 U.S.C. § 523(a)(6) which encompasses those debts which arise as the result of a debtor's willful and malicious conduct. After considering the evidence presented at the Trial held on this matter, as well as the entire record of this case, the Court, for the reasons that will now be explained, finds that the debt at issue in this matter is nondischargeable.

### FACTS

On October 13, 2001, the Defendant, Joel Taylor, entered the property at which the Plaintiff, Kevin Kleman, resided. (hereinafter the Parties will be referred to respectively as the "Plaintiff" and the "Defendant"). At the time of his arrival, numerous people were already congregated for a social gathering where, despite the presence of underage persons, significant quantities of alcohol were available and consumed by many of the persons present at the party, the Plaintiff included. The Defendant, however, despite an admitted proclivity for alcohol, stated that he did not consume any alcoholic beverages that evening.

Although the Parties disagree as to the exact time, at some point during the evening there was a verbal altercation between the Plaintiff and the Defendant. By the Defendant's own admission, this altercation stemmed from earlier comments that he had made concerning clothing that an underage boy had worn to the party. Eventually, the Parties' altercation turned physical, with the Plaintiff, as a proximate result of being struck by the Defendant, sustaining a broken jaw. According to the Defendant, however, this action was only taken after the Plaintiff, as the initial ag-

gressor, pushed him. On account of his injury, the Plaintiff had his mouth wired shut for six weeks and sustained, as direct damages, some minor loss of wages, but because of medical insurance, incurred no significant medical costs.

At a later point in time, the Plaintiff filed suit against the Defendant in state court seeking redress for his injuries. During the course of this litigation, the Defendant, who was unrepresented by legal counsel, agreed to compensate the Plaintiff for his injury in return for the dismissal of the lawsuit. In accordance therewith, the Plaintiff dismissed his case, with the Defendant signing a promissory note stating that he would pay the Plaintiff the principal sum of $15,000.00, with interest, over a five year and nine month period. On August 25, 2003, the Defendant filed a Voluntary Petition under Chapter 7 of the United States Bankruptcy listing this obligation as a general unsecured debt.

### LAW

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

### DISCUSSION

An action, such as this, brought to determine the dischargeability of a particular debt is a core proceeding over which this Court has been conferred with the jurisdictional authority to enter final orders and judgments. 28 U.S.C. §§ 157(a)/(b)(2)(I) and 1334.

▬ The Plaintiff brings his Complaint to Determine Dischargeability pursuant to the exception to discharge set forth in 11 U.S.C. § 523(a)(6). Under this section, a debt will be excepted from the scope of a bankruptcy discharge if it arises as the result of a "willful and malicious injury by the debtor to another entity or to the property of another entity." As applied to this language, there exist two key requirements: "willful" and "malicious" conduct, both types of which, by the statute's utilization of the conjunctive term "and," must be in existence before there may be a finding of nondischargeability. *Gonzalez v. Moffitt*, 254 B.R. 389, 395–96 (Bankr.N.D.Ohio.2000), *citing Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir.1999) (holding that if both willful and malicious are not met the debt is dischargeable). It is also follows from the statute's conjunctive nature that, while possibly overlapping in places, the terms "willful" and "malicious" encompass separate and distinct concepts. *Id.*

In *Kawaauhau v. Geiger*, the Supreme Court of the United States had the opportunity to address the meaning of the term "willful" as it is used in § 523(a)(6). 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). On a whole, the question before the Court, which had divided the Circuit Courts, was whether to allow negligent and reckless acts to be included within the scope of a "willful" act under § 523(a)(6), or to instead adopt a higher standard by limiting "willful" acts to the type of conduct that would give rise to an intentional tort. Based in large part upon the common law standard for intentional torts, together with principles of statutory construction, the Supreme Court adopted the latter standard, stating, "nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Id.* at 61, 118 S.Ct. 974. Although not addressed by the Supreme Court in *Geiger*, the meaning of the term "malicious" as used in § 523(a)(6) has

been defined in the Sixth Circuit as acts done in conscious disregard of one's duties or without just cause or excuse; no ill-will hatred or spite is required, however. *Vulcan Coals, Inc. v. Howard*, 946 F.2d 1226, 1229 (6th Cir.1991); *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir.1986); *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 308 (6th Cir. BAP 2004).[1]

As applied to this case, the Defendant's position did not center on showing the absence of any "willful" conduct on his part. And, this Court agrees that, even under the higher standard espoused in *Geiger*, that the Defendant's actions were, in fact, "willful" based upon the common sense notion that when one physically hits another with enough force to break another's jaw, an alternative, but plausible explanation is all but impossible to discern. *See Homan v. Perretti*, 172 B.R. 214, 217 (Bankr.N.D.Ohio 1994) (one person does not strike a blow at another person's face without intending to injure the other person.). Instead, as a defense against the Plaintiff's cause of action under § 523(a)(6), the Defendant's position centered on a justifiable excuse, thereby negating the existence of any malice on his part. In doing so, the Plaintiff put forth a single supposition: it was the Plaintiff and not himself, who was the first to physically strike the other.

In many situations involving physical altercations,—the barroom fight being a common paradigm—the respective parties blame the other for starting the altercation. This case is no exception, with the Defendant contending that it was the Plaintiff, not himself, who struck first. Who struck who first, however, while not necessarily being irrelevant, is not the dis-

positive issue; a person, even though struck first, may obviously retaliate in a manner that, beside exceeding the scope of the original attack, is done in conscious disregard of one's duties or without just cause or excuse. Instead, the issue of being struck first indirectly raises and is only relevant to the issue of self-defense.

■ It is black-letter law that one who believes that he or she is about to be harmed is privileged to use reasonable force to protect themselves. 6Am.Jur.2nd *Assault and Battery*, § 110. Acts properly taken, therefore, in self-defense provide a valid defense to an action brought under § 523(a)(6); this has always been understood. *Diekman v. Czanik (In re Czanik)*, 51 B.R. 637, 638 (Bankr.S.D.Ohio 1985). However, the claim of self-defense is an affirmative defense, thereby placing the burden on the Defendant to establish its elements. Also, from an evidentiary standpoint, it cannot be overlooked that by raising an affirmative defense, which in effect admits the truth of the underlying allegations, the Defendant has ostensibly admitted that he acted with malice, but that he has a legally exculpatory reasons for the action. *In re Pizazz Disco & Supperclub, Inc.*, 114 B.R. 104, 109 (Bankr. W.D.Pa.1990).

■ Strictly speaking, federal law controls the standard for nondischargeability under § 523(a)(6), as well as the defenses thereto. *Graffice v. Grim (In re Grim)*, 293 B.R. 156, 167 (Bankr.N.D.Ohio 2003). Reference, however, in this case will be made to Ohio law given the lack of authority, both controlling and persuasive, on the matter of self-defense as it applies to § 523(a)(6). *See Semler v. Semler (In*

---

1. It should be noted that in these decisions it was also stated that malice did not require any specific intent to cause harm. However, given the Supreme Court's decision in *Ka-*

*waauhau v. Geiger*, specific intent is now subsumed under the "willful" requirement of § 523(a)(6).

*re Semler)*, 147 B.R. 137, 139 (Bankr. N.D.Ohio 1992) (although federal law controls dischargeability determinations, state law can provide guidance). Under Ohio law, the elements of self-defense, which are similar to those of other jurisdictions, are: (1) lack of fault in creating the situation giving rise to the affray; (2) a bona fide belief of imminent danger of death or bodily harm; (3) a belief that the only means of escape from danger is through the use of force; and (4) there is not a duty to retreat. *State v. Williford*, 49 Ohio St.3d 247, 249, 551 N.E.2d 1279 (1990); *State v. Jackson*, 22 Ohio St.3d 281, 284, 490 N.E.2d 893 (1986).

As these elements show, the major point of contention between the Parties—who struck first—can be of great importance in determining the applicability of a self-defense claim, especially with respect to the first requirement: lack of fault in creating the situation. Other considerations, however, cannot be ignored. For example, as it also relates to the first requirement, the Defendant's role in the whole affray cannot be termed guiltless; he was the one who verbally initiated the matter by making fun of another boy's clothing. However, even operating under the assumption that it was the Plaintiff who started the whole affray, does not help the Defendant's claim of self-defense.

First, there is no evidence that after being pushed, the Plaintiff continued to pursue or otherwise threaten the Defendant. Nor, was there any evidence that the Defendant was pushed into a location where a general withdraw from the area could not be safely accomplished; to the contrary, by the Defendant's own account of events, after being pushed from behind, his momentum led him to an area where egress from the Plaintiff's property was made even more accessible. Taking this fact a step further, it is also noted that the Plaintiff's push, if it did occur, could not have been severe as the Defendant suffered no appreciable injury. Into this mix, it also cannot be ignored that the Parties are of approximately the same age, height, weight and build.

When viewed, therefore, as a whole, these attendant facts erode from numerous sides the foundational requirements on which a claim of self-defense rests. To begin with, based upon the limited nature of their altercation, it is simply not feasible that the Defendant could have realistically believed that he was in imminent danger of physical harm. The factual circumstances also show that the Defendant, after being pushed, could have safely left the party had he so desired. Under such circumstances, Ohio law imposes upon a person a general duty to retreat, the only exception being if the assault occurs in one's home or business. Neither of these exceptions, however, are applicable in this case as the Defendant was not on his property, but rather at the Plaintiff's residence. *Fields v. Dailey*, 68 Ohio App.3d 33, 39, 587 N.E.2d 400 (1990); *Graham v. State*, 98 Ohio St. 77, 79, 120 N.E. 232, 233 (1918).

For these reasons, therefore, it must be concluded that the use of force by the Defendant was not necessary to stop any further physical assault. Instead, it is the perception of this Court that the Defendant's act of striking the Plaintiff boils down to one word: Pride. Stated differently, the Defendant struck the Plaintiff in order to save face. In making this statement, the underlying factual circumstances of this case cannot be ignored. The Parties' altercation occurred at a party where large amounts of alcohol were being consumed by underage persons and persons of just legal drinking age.

In sum, the weight of the evidence presented in this case does not support a finding that the Defendant acted in self-

defense. As such, the only conclusion that can be drawn is that, within the meaning of § 523(a)(6), the Defendant, in causing injury to the Plaintiff, acted both "wilfully" and "maliciously." In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that the debt owed by the Defendant, Joel Taylor, to the Plaintiff, Kevin Kleman, as exhibited by a cognovit promissory note signed by the Defendant on March 19, 2003, be, and is hereby, determined to be a NONDISCHARGE-ABLE DEBT.