*By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and parties pursuant to 6th
Cir. BAP LBR 8024-1(b). See also 6th Cir. BAP LBR 8014-1(c).*

File Name: 16b0001n.06

# BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | |
|---|---|
| In re: COLLIN D. CASCIANO )<br>)<br>Debtor. )<br>)<br>—————————————————— )<br>)<br>NATHAN J. JUETT )<br>)<br>Plaintiff-Appellant, )<br>)<br>v. )<br>)<br>COLLIN D. CASCIANO )<br>)<br>Defendant-Appellee. )<br>)<br>—————————————————— ) | No. 15-8013 |

Appeal from the United States Bankruptcy Court
for the Western District of Michigan.
Bankruptcy Case No. 12-09912; Adversary Proceeding No. 13-80005.

Argued: November 9, 2015

Decided and Filed: January 11, 2016

Before: DELK, HUMPHREY and LLOYD, Bankruptcy Appellate Panel Judges.

———————————

## COUNSEL

**ARGUED:** Mark R. Bendure, BENDURE & THOMAS, Detroit, Michigan, for Appellant. Michael I. Conlon, RUNNING, WISE & FORD, PLC, Traverse City, Michigan, for Appellee. **ON BRIEF:** Mark R. Bendure, BENDURE & THOMAS, Detroit, Michigan, for Appellant. Michael I. Conlon, RUNNING, WISE & FORD, PLC, Traverse City, Michigan, for Appellee.

---

**OPINION**

---

**JOAN A. LLOYD**, Bankruptcy Appellate Panel Judge.   This is an appeal from the bankruptcy court's order after trial finding that Nathan Juett ("Plaintiff") failed to prove all necessary elements of his claim that any obligation[1] owed to him by Collin Casciano ("Debtor") is nondischargeable under 11 U.S.C. § 523(a)(6).   For the reasons stated in this opinion, the Panel concludes that the Debtor's action in punching Plaintiff in the face was "willful" within the meaning of 11 U.S.C. § 523(a)(6) and that the bankruptcy court failed to analyze Debtor's claim of self-defense under applicable law.   Therefore, the bankruptcy court's ruling on whether Debtor's action was "willful" is reversed and the case is remanded for further proceedings consistent with this opinion.

**I.  ISSUES ON APPEAL**

1.  Whether the bankruptcy court erred in finding that Plaintiff failed to prove a "willful and malicious injury" under 11 U.S.C. § 523(a)(6).

2.  Whether the bankruptcy court erred in its analysis of Debtor's self-defense claim to the Plaintiff's claim under 11 U.S.C. § 523(a)(6).

3.  Whether the Panel should grant Debtor's Motion to Strike Portions of the Appellant's Brief ("Motion to Strike") which refer to Debtor's criminal conviction in state court based on a plea of *nolo contendere* as inadmissible pursuant to Fed. R. Evid. 410.

---

[1]A civil action initiated by Plaintiff in the Circuit Court for the County of Grand Traverse, State of Michigan, File No.: 11-28873, was stayed subsequent to the filing of Debtor's Petition and the claim was not liquidated prior to the trial in the adversary proceeding.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit ("BAP") has jurisdiction to decide this appeal. The United States District Court for the Western District of Michigan has authorized appeals to the BAP and no party has timely elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6) and (c)(1). A "final" order of a bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (internal quotations and citations omitted). Determinations of dischargeability are final orders for purposes of appeal. *Cash Am. Fin. Servs., Inc. v. Fox (In re Fox)*, 370 B.R. 104, 109 (B.A.P. 6th Cir. 2007) (quoting *Hertzel v. Educ. Credit Mgmt. Corp. (In re Hertzel)*, 329 B.R. 221, 224-25 (B.A.P. 6th Cir. 2005)).

Dischargeability determinations present mixed questions of law and fact. *Hogan v. George (In re George)*, 485 B.R. 478 (table), 2013 WL 135274 at *1, No. 12-8013 (B.A.P. 6th Cir. Jan. 11, 2013) (*citing Van Aken v. Van Aken (In re Van Aken)*, 320 B.R. 620, 622 (B.A.P. 6th Cir. 2005)). When a mixed question of law and fact arises in the bankruptcy context, the reviewing court "must break it down into its constituent parts and apply the appropriate standard of review for each part." *Bank of Montreal v. Official Comm. Of Unsecured Creditors (In re Am. Homepatient, Inc.)*, 420 F.3d 559, 563 (6th Cir. 2005), *reh'g denied* (citations omitted). The appellate court reviews conclusions of law *de novo* and factual determinations are reviewed under a clearly erroneous standard. *In re Van Aken*, 320 B.R. at 622. "Under a *de novo* standard of review, the appellate court must 'review questions of law independent of the bankruptcy court's determination.' " *Phillips v. Weissert (In re Phillips)*, 434 B.R. 475, 482 (B.A.P. 6th Cir. 2010) (citing *Bailey v. Bailey (In re Bailey)*, 254 B.R. 901, 903 (B.A.P. 6th Cir. 2000)). "A finding of fact is clearly erroneous 'when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Riverview Trenton R.R. Co. v. DSC, Ltd. (In re DSC, Ltd.)*, 486 F.3d 940, 944 (6th Cir. 2007) (citations omitted).

### III. FACTS

On January 29, 2011, Plaintiff, a member of the Michigan bar, and his girlfriend, Jody Lindgren ("Lindgren") decided to take her newly divorced cousin, Meredith McNabb ("McNabb") for an evening out. After visiting several area bars and consuming several alcoholic drinks, the group arrived at a bar in Traverse City, Michigan called "Bootleggers." The group arrived some time between midnight and 2 a.m.

On the same evening, the Debtor, along with his friend, Garrett Petterson ("Petterson"), and an acquaintance, Jonathan Crispin ("Crispin"), arrived at Bootleggers between 9 p.m. and 10 p.m. The group was drinking alcohol and interacting with other bar patrons. Plaintiff left the two women seated at a table for a few moments to visit the restroom. During his absence, Petterson and Debtor approached the two women and engaged them in conversation. Plaintiff returned shortly thereafter and was not happy with the gentlemen's presence. He placed himself between Petterson and Debtor and the two women. Debtor and Petterson claim that Plaintiff bumped Debtor in the lower back or shoulder area (Casciano, Tr. 203, Petterson, Tr. 398)[2], with Debtor testifying that Plaintiff "knocked me forward." (Casciano, Tr. 203). Debtor who is 5'11", 170 to 175 pounds turned around and observed Plaintiff, who is approximately 6'0" tall weighing 230 to 235 pounds and noting that he was much larger than himself, decided to walk away from the encounter. Petterson, however, continued to verbally engage with Plaintiff with Lindgren joining in the exchange. The exchange soon reached a point where the employees of Bootleggers requested that Petterson, Debtor and Crispin leave the premises. Although the group protested, they were unsuccessful and Debtor, Crispin and Petterson moved toward the back exit of the bar where their coats were located.

---

[2]All references to docket entries ("Doc. No. _____") are references to the bankruptcy court's electronic case docket for Adversary Proceeding No. 13-80005. All transcript references ("Tr. __") are to the trial conducted on March 12 and 13, 2014. Doc. Nos. 42 and 43 are the transcripts of the trial. References to exhibits are the exhibits admitted at trial.

Shortly thereafter, Plaintiff, Lindgren and McNabb decided it was also time to leave the bar. They paid their bill and prepared to exit out of the back door, where Debtor, Petterson and Crispin were preparing to depart.

Bootleggers is a long, narrow bar, with a front and rear entrance. The bankruptcy court found that patrons may access the bar by either the front or back entrance. The front entrance is on Union Street and the rear exit faces an alley that runs north and south parallel with Union Street. The alley intersects with another alley running east and west. The west end of the second alley intersects with Union. At the eastern end of the second alley is a business called Mode's Bum Steer, where Plaintiff, Lindgren and McNabb had planned to meet a ride. Debtor, Petterson and Crispin were headed to Petterson's apartment on Front Street. In order for the groups to get to their respective destinations, Plaintiff and the women had to go east and Debtor and his group had to go west when they reached the second alley.

Plaintiff, Lindgren and McNabb left the rear exit of Bootleggers first and began walking north on the alley. The Debtor's group left after Plaintiff's group and was 20 to 30 feet behind Plaintiff's group. At some point, the parties began exchanging words and insults. During the exchange, Lindgren called Debtor and Petterson "douche bags," after which someone in Debtor's group told Plaintiff that he needed to control his girlfriend. By this time, Debtor's group had turned west on the alley and Plaintiff and his group were proceeding east toward their ride. During this exchange, Lindgren reversed her direction and continued talking to Petterson and moving toward Debtor and his group. Plaintiff followed her. The bankruptcy court found that during this time, neither Debtor nor McNabb were involved in the verbal sparring.

The eye witness accounts diverge as to what happened next. Debtor testified that Lindgren charged at Petterson stating that Plaintiff was going to "beat his ass." An independent witness, Edwin Skiera, an employee of the bar, testified that Lindgren walked back toward Debtor and Petterson, a verbal confrontation ensued and Lindgren kicked Petterson in the shin. Petterson then pushed Lindgren back and she either slipped on ice or fell down. Plaintiff came to her aid and wrestled Petterson to the ground. The bankruptcy court found that Plaintiff soon got Petterson to be

less belligerent. Debtor testified that he saw Plaintiff take Petterson to the ground and the side of Petterson's head hit the pavement. He thought Petterson was knocked out. He then saw Plaintiff hit Petterson in the face while on top of him (Casciano, Tr. 233-35). Both Debtor and Crispin testified that Petterson had blood on his face (Crispin, Tr. 359, Casciano, Tr. 233-34).

As Plaintiff was in the course of standing up, Debtor hit him with his right fist on the left side of his face. Plaintiff claimed he was in the process of standing up and getting off Petterson when he was blindsided by Debtor's punch. Debtor contends that after Plaintiff had gotten off Petterson, "he turned in my direction and that's when it happened. Because I was standing maybe five, seven feet away from this whole thing so like – – he popped up, leaned into my direction, turned all of the way towards me. I hit him with my right fist on his left side of his face. So we were face-to-face. There is no other way I could hit him." (Casciano, Tr. 228).

Plaintiff knew immediately that the punch he received was severe and asked someone to call the police. Debtor, Petterson and Crispin immediately left the scene. Plaintiff refused to be taken to the hospital at that time, but later had his father take him to the hospital. His injuries consisted of a fracture of the left orbital floor, a bilateral nasal bone fracture and nerve damage.

Debtor, Petterson and Crispin were eventually identified through social media. The police interviewed Petterson a few days after the incident. The officer noted that Petterson had a swollen nose and dried blood around his lip. (Doc. No. 65, Defendant's Ex. 1.) Debtor was charged with assault and battery, a charge that resulted in a conviction based on his plea of *nolo contendere*.

On November 1, 2011, Plaintiff filed a civil action in the Circuit Court for the County of Grand Traverse, State of Michigan, File No. 11-28873, against Defendants, Debtor and Petterson. The case was scheduled for trial on October 24-26, 2012, but was postponed due to Debtor's counsel's representation that Debtor was going to file a bankruptcy petition.

On November 13, 2012, Debtor filed a Chapter 7 Bankruptcy Petition in which he listed Plaintiff as a creditor on Schedule F with a claim in an unknown amount.

On January 7, 2013, Plaintiff instituted an adversary proceeding against Debtor objecting to the dischargeability of any obligation owed by Debtor to Plaintiff based on 11 U.S.C. § 523(a)(6) for willful and malicious injury.

A trial was held in the adversary proceeding on March 12 and 13, 2014. The bankruptcy court heard the testimony of Lindgren, McNabb, Skiera, Plaintiff, Debtor, William Bustance, a boxing instructor who testified on the type of punch necessary to cause the type of injuries suffered by Plaintiff, Crispin and Petterson. The Court also admitted into evidence the deposition of Matthew Smith, M.D., Plaintiff's Exhibits 1-5 and Defendant's Exhibits A-C. Both parties filed post-trial closing briefs. (Doc. Nos. 45, 47.) In addition to closing briefs, the court also requested each side to answer ten specific questions to assist the Court as the trier fact. Each side filed a brief in response to the bankruptcy court's questions. (Doc. Nos. 46, 47.)

On September 5, 2014, the bankruptcy court issued its Opinion and Order After Trial holding that the Debtor did not act in "such a manner as to warrant the exception to discharge of any obligation he may owe the Plaintiff" under 11 U.S.C. § 523(a)(6). (Doc. No. 50.) On September 18, 2014, Plaintiff filed a Motion for Rehearing and Debtor filed a Response on October 16, 2014. (Doc. Nos. 51, 55.) After a hearing, the bankruptcy court issued its Opinion and Order Denying Plaintiff's Motion for Rehearing on March 13, 2015. (Doc. No. 57.)

## IV.  DISCUSSION

### A.  The Bankruptcy Court's Findings of Fact are not Clearly Erroneous

Under 11 U.S.C. § 523(a)(6), an individual debtor is not entitled to discharge any debt for willful and malicious injury. Plaintiff contends that by intentionally punching him in the face, Debtor acted willfully and maliciously causing injury. (Doc. No. 1.) A willful and malicious injury occurs "if the debtor (1) intends to cause the consequences of his act or (2) believes the consequences are substantially certain to occur." *In re Taylor*, No. 10-50039, 2011 WL 841511, at *4 (Bankr. E.D. Ky. Mar. 4, 2011) (citing *Kennedy v. Mustaine (In re Kennedy)*, 249 F.3d 576, 580 (6th Cir. 2001)).

In reviewing a bankruptcy court's determination whether a debtor's conduct was willful and malicious for purposes of 11 U.S.C. § 523(a)(6), the appellate court applies the clearly erroneous standard. *Phillips v. Weissert (In re Phillips)*, 434 B.R. 475, 483 (B.A.P. 6th Cir. 2010). "Under the clearly erroneous standard, the Panel must give deference to the bankruptcy court as the finder of fact." *Id.* (citing *Sicherman v. Diamoncut, Inc. (In re Sol Bergman Estate Jewelers, Inc.)*, 225 B.R. 896, 904 (B.A.P. 6th Cir. 1998)). "The bankruptcy court is in the best position to assess the testimony and credibility of witnesses." *In re Phillips*, 434 B.R. at 483 (citing *Kaye v. Agripool, SRL (In re Murray, Inc.)*, 392 B.R. 288, 297 (B.A.P. 6th Cir. 2008)).

> [A]lternative interpretations or differing views of the evidence, do not constitute clear error. *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d at 1166 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."); *Lyon v. Eiseman (In re Forbes)*, 372 B.R. 321, 334 (6th Cir. BAP 2007) ("When differing views of the evidence are possible, the bankruptcy court's findings cannot be clearly erroneous."). "The clearly erroneous standard does not permit this Panel to substitute its assessments of credibility in place of the explicit findings made by the bankruptcy court." *In re Forbes*, 372 B.R. at 334. As long as the bankruptcy court's findings are "reasonable and supported by the evidence," the Panel may not overturn them. *Id.* (quoting *DuVoisin v. Foster (In re S. Indus. Banking Corp.)*, 809 F.2d 329, 331 (6th Cir. 1987)).

*In re Phillips*, 434 B.R. at 484.

Plaintiff contends the bankruptcy court made several factual findings upon which it based its decision which were clearly erroneous. (Appellant's Br., pp. 18-22.) A review of the findings relied upon by Plaintiff are either not clearly erroneous in that the court chose to believe testimony of other witnesses that contradicted the facts referenced by Plaintiff in his brief, or the facts were not significant enough to support Plaintiff's legal claims.

The Panel must examine these facts in determining if they are "reasonable and supported by the evidence." *In re S. Indus. Banking Corp.*, 809 F.2d at 331. If the Panel is left with a definite and firm conviction that a mistake has been made then the bankruptcy court's factual findings must be overturned.

The bankruptcy court's factual findings regarding the parties' actions that led to Plaintiff's injury are not clearly erroneous. There is ample support in the record for the bankruptcy court's findings regarding the events that led up to the punch by Debtor that injured Plaintiff. In its initial Opinion after trial, the bankruptcy court made an erroneous factual finding when it stated that Plaintiff played high school hockey. This finding however, was corrected in the Opinion on Rehearing and as the court noted, did not warrant reversal of the ultimate findings by the court.

The bankruptcy court's factual findings were based on its determination of the credibility of the witnesses. Furthermore, the Court noted, based on "the testimony of the Plaintiff, the Defendant, Mr. Petterson and Ms. Lindgren, that they all were intoxicated and their judgment was clouded by alcohol consumption that night." (Opinion, p. 5). However, the findings of the court were not unreasonable, were supported by the trial testimony and will not be overturned as clearly erroneous.

### B. Debtor's Actions Were Willful

Plaintiff contends that the bankruptcy court legally erred in finding that 11 U.S.C. § 523(a)(6) allows discharge of civil liability for criminal assault on the ground that the Debtor, in punching Plaintiff, did not know that his punch "would cause injury." In order to prove that any obligation owed by Debtor to Plaintiff should be excepted from discharge, the creditor must prove by a preponderance of the evidence that a debtor committed an injury that is both "willful" and "malicious." The absence of either one creates a dischargeable debt. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999). Only acts done with intent to cause injury––and not merely acts done intentionally––can cause willful and malicious injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62, 118 S. Ct. 974, 977 (1998).

While the bankruptcy court's recitation of the legal standard in determining whether a claim for "willful and malicious" injury is excepted from discharge under 11 U.S.C. § 523(a)(6) was correct, its analysis of Debtor's state of mind as being devoid of the requisite intent or knowledge under § 523(a)(6) was not. On this point the bankruptcy court stated:

> First, the Defendant testified that he had no fight experience and essentially did not know what he was doing that night. Second, while it is clear that the Defendant intended to punch the Plaintiff, there is not the necessary nexus between the punch and the consequences of the act. There is no evidence that the Defendant knew that punching the Plaintiff in this location on his face would cause the resulting injury to ensue, if any. Further, the evidence is that the Defendant threw only one punch and did not inflict any other blows upon the Plaintiff. While the Defendant undoubtedly thought that this one punch would slow the Plaintiff down, there is no evidence that he believed that the effect of the one punch would be anymore than that, and certainly not the type of injury that it caused.

(Opinion, p. 14.) The bankruptcy court then concluded that Debtor's actions were not "willful." In other words, that in throwing the punch Debtor did not "will or desire harm, or believe injury was substantially certain to occur" as a result of his behavior.

Plaintiff contends on appeal that this statement by the bankruptcy court impermissibly added the requirement that he prove that Debtor intended to cause the specific harm that resulted from his punch. Plaintiff is correct that this is an incorrect statement of the law on what constitutes a "willful" injury under § 523(a)(6). The bankruptcy court erred in its analysis by requiring Plaintiff to prove that Debtor desired to cause the specific injury or harm that resulted from the punch.

The bankruptcy court found that Debtor, at a minimum, intended to punch Plaintiff to "slow the Plaintiff down." (Opinion, p. 14.) In a case with similar facts, where the debtor threw one punch breaking the creditor's jaw and claimed self-defense to an action under 11 U.S.C. § 523(a)(6), the bankruptcy court gave little consideration to the "willful" element of the claim stating:

> [T]he Defendant's actions were, in fact, "willful" based upon the common sense notion that when one physically hits another with enough force to break another's jaw, an alternative, but plausible explanation is all but impossible to discern. *See Homan v. Perretti*, 172 B.R. 214, 217 (Bankr. N.D. Ohio 1994) (one person does not strike a blow at another's face without intending to injure the other person.) Instead, as a defense against the Plaintiff's cause of action under § 523(a)(6), the Defendant's position centered on a justifiable excuse, thereby negating the existence of any malice on his part.

*Kleman v. Taylor (In re Taylor)*, 322 B.R. 306, 309 (Bankr. N.D. Ohio 2004). Similarly, Debtor intended to throw the punch to slow Plaintiff down. Such action evidences an intent to harm and is "willful" under the statute. Therefore, the bankruptcy court's legal conclusion that Debtor's action in throwing the punch was not "willful" under the statute was in error and must be reversed.

### C. Self-Defense May Negate a Finding of Malice

The Panel next must consider whether the Debtor's actions in claiming self-defense negates the existence of malice. The term "malicious" in the statute has been interpreted to mean "in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986) (citations omitted). The bankruptcy court correctly noted that a debtor will rarely admit to acting in a willful and malicious manner. However, both can be inferred from the circumstances surrounding the injury. (Opinion, p. 11.) (citing *O'Brien v. Sintobin (In re Sintobin)*, 253 B.R. 826, 831 (Bankr. N.D. Ohio 2000)).

The bankruptcy court determined that while everyone owes another individual the duty not to assault that individual, the Debtor was "placed in a position of having to defend himself, thus forming just cause." (Opinion, p. 14.) Based on the facts, the bankruptcy court made the legal conclusion that Debtor's actions were not without just cause or excuse. If correct, this finding negates any finding of malicious injury and therefore, any obligation arising from the injury would be dischargeable. The court's finding that the Debtor's actions were with just cause were based on the findings that Debtor was not the initial aggressor inside the bar, that he walked away when Plaintiff shoved him, that he did not re-engage in the verbal altercation outside the bar in the alley and threw only one punch when Plaintiff stood up looking in his direction and was in a position to attack him next. The Court, therefore, inferred from these circumstances that Debtor's actions were justified and did not meet the level of "maliciousness" required by the statute.

Self-defense can constitute a justifiable excuse for a defendant's actions and negate a claim of malice under § 523(a)(6). *In re Taylor*, 322 B.R. at 309. Since it is an affirmative defense, the

debtor bears the burden of proving the elements of self-defense. *Id.* The bankruptcy court, however, did not discuss the legal requirements related to the Debtor's claim of self-defense and whether Debtor met his burden of proof on this issue.

Dischargeability actions, as well as the defenses thereto, are governed by federal law. *Graffice v. Grim (In re Grim)*, 293 B.R. 156 - 166 (Bankr. N.D. Ohio 2003). However, the law on self-defense is an area where bankruptcy courts have looked to both federal common law and state law for guidance. *See*, *e.g. Vyshedsky v. Soliman* (*In re Soliman*), 539 B.R. 692, 701-03 (Bankr. S.D.N.Y. 2015); *Hernandez v. Greene (In re Greene)*, 397 B.R. 688, 694-95 (Bankr. S.D.N.Y. 2008) (analyzing self-defense under both federal common law and state law where debtors entered guilty pleas in underlying criminal actions) and *In re Taylor*, 322 B.R. at 310; *Estate of Sustache v. Mathews (In re Mathews)*, 433 B.R. 732, 735 (Bankr. E.D. Wis. 2010) (analyzing self-defense under state law noting authority on federal common law self-defense is sparse and requires guidance from state law on the issue).

In most cases, self-defense is brought as a defense to murder, not simple battery. As a result, Michigan's common law on self-defense using non-deadly force is somewhat sparse. However, Michigan's legislature codified the common law rules of self-defense in 2006 in the Self-Defense Act. *People v. Dupree*, 788 N.W.2d 399, 407 (Mich. 2010); Mich. Comp. Laws Ann. § 780.971 *et seq.* (West 2006). To the extent that the codification altered the common law rule, it did not diminish an individual's common law right to use force in self-defense. Mich. Comp. Laws Ann. § 780.974 (West 2006). The Self-Defense Act states in pertinent part that:

> [a]n individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual.

Mich. Comp. Laws Ann. § 780.972(2) (West 2006).

Federal courts have cited to the Restatement (Second) of Torts to assist and construe federal self-defense claims under Title VII and the Federal Tort Claims Act. *See Vanhorn v. Specialized Support Servs., Inc.*, 241 F.Supp.2d 994, 1013 (S.D. Iowa 2003), *Garcia v. United States*, No. CIV. 08-0295 JB/WDS, 2010 WL 2977611, at \*21 (D.N.M. June 15, 2010). The Second Restatement deals with the use of non-lethal force in § 63 stating that an actor is privileged to use such force to prevent "unprivileged harmful or offensive contact or other bodily harm which he reasonably believes that another is about to inflict intentionally upon him," even if the necessity to use force could be avoided by retreating. Restatement (Second) of Torts § 63 (1965).

The Michigan statute closely mirrors the standards set forth in the Restatement (Second) of Torts. Though the two standards are slightly different, for the matter before the Court, they are not in conflict. Both allow the use of non-lethal force if honestly and reasonably believed to be necessary to repel an imminent attack, even if retreat is possible.

The bankruptcy court made numerous factual findings regarding the parties' conduct on the evening in question that relate to the Debtor's claim of self-defense. However, the bankruptcy court did not analyze these actions under applicable law on self-defense or determine if the Debtor met his burden of proof on that issue. For this reason, the Panel must remand the matter to the bankruptcy court for further proceedings regarding the element of "malicious injury" under § 523(a)(6) and Debtor's claim of self-defense.

### D. Inadmissibility of Criminal Convictions Based on Plea of *Nolo Contendere* Under Fed. R. Evid. 410

Debtor requests that the Panel strike four references in the Plaintiff's brief that either refer to matters not in evidence before the bankruptcy court or are otherwise inadmissible pursuant to Federal Rule of Evidence 410. The four references in the Plaintiff's brief are to Debtor's conviction by a *nolo contendere* plea to assault and battery charges in criminal court.

There was no mention of the criminal charges against Debtor or his plea of *nolo contendere* and subsequent conviction at the trial or in the bankruptcy court's Opinion. The only mention of the

charge and Debtor's plea were in the complaint in the adversary proceeding. Debtor responded to the allegation in his answer stating that no answer was required because any such allegations were inadmissible in the adversary proceeding.

The rules of pleading require that any denial of an allegation "must fairly respond to the substance of the allegation." Fed. R. Civ. P. 8(b)(2), made applicable to adversary proceedings in Fed. R. Bankr. P. 7008. The Debtor's answers to the allegations of the complaint did not fairly meet the substance of the allegations and therefore constitute an admission under Federal Rule of Civil Procedure 8(b)(6). Since the pleadings are part of the record, the matter was in evidence before the bankruptcy court.

Under Rule 410, which is made applicable to bankruptcy proceedings in Federal Rule of Bankruptcy Procedure 1101(e), a plea of *nolo contendere* is inadmissible in a subsequent civil proceeding brought against the party who made the plea. Fed. R. Evid. 410(a)(2). The plea constitutes an admission only for the purposes of the criminal case. *Nolo contendere* pleas are used to avoid the effect of a plea of guilty on an impending civil case. "Thus, in any subsequent action, whether arising out of the same facts or not, neither the *nolo contendere* plea nor the conviction based on the plea may be admitted as either an admission, as a judgment of conviction or to impeach." 2 Hon. Barry Russell, *Bankruptcy Evidence Manual* §410:1 (2014-2015). The plea cannot be used as an admission in any civil suit for the same act. *Doherty v. Am. Motors Corp.*, 728 F.2d 334, 337 (6th Cir. 1984).

In the case of *Johnson v. Johns (In re Johns)*, 158 B.R. 687, 690 (Bankr. N.D. Ohio 1993), the bankruptcy court held that a plea of *nolo contendere* by the defendant charged with unlawfully causing physical harm to the plaintiff could not be admitted into evidence in a nondischargeability action brought under 11 U.S.C. § 523(a)(6). The plea itself is not an admission of guilt, but an admission of the truth of the facts alleged in the indictment, information or complaint and it is not admissible against the defendant who made the plea in any subsequent proceeding against the defendant. *In re Johns*, 158 B.R. at 689-690. *See also Vogel v. Kalita (In re Kalita)*, 202 B.R. 889, 896-98 (Bankr. W.D. Mich. 1996) (holding under Michigan law a plea of *nolo contendere* and

conviction based on the plea has no preclusive effect in subsequent nondischargeability action brought under § 523(a)(6)).

The Debtor's conviction of assault and battery by a plea of *nolo contendere* is inadmissible in the nondischargeability proceeding. It cannot be used in determining the dischargeability of any obligation Debtor may owe the Plaintiff. Therefore, the Plaintiff's Motion to Strike is granted.

## V. CONCLUSION

The Panel concludes that the bankruptcy court erred when it held the Debtor's actions were not "willful" under 11 U.S.C. § 523(a)(6). Concerning the malice element, further proceedings are necessary to determine the legal effect of the bankruptcy judge's findings of fact on Debtor's claim of self-defense under applicable law. The bankruptcy court's order finding Debtor's actions in punching Plaintiff were not "willful" is reversed, and the matter is remanded to the bankruptcy court for further proceedings consistent with this Opinion. Any references to the Debtor's conviction by a plea of *nolo contendere* to assault and battery are inadmissible. By separate order the Panel will grant Debtor's Motion to Strike.